We're ready to proceed with the first case, which is Jake's Fireworks v. Department of Labor, 179536. Counsel, if you'll enter your appearance, please. May it please the court. My name is Eric Claussen, appearing on behalf of Jake's Fireworks, the appellant. Your Honors, on August 12, 2014, a fire erupted while two Jake's Fireworks employees were cleaning out a storage container. Tragically, one of the employees lost his life and another was injured. OSHA and the State Fire Marshal both conducted investigations immediately thereafter, but the cause of the fire was never determined. OSHA issued five citations to Jake's, which were confirmed by the ALJ after trial in the When you boil down the ALJ and the Secretary's position, I think it's really that a fire occurred, and so you have citations. The accident speaks for itself. This is really just reps a loquitur, which is not allowed in OSHA Act citations. I could address that in our brief, in the AMSLAB briefcase, in the Crowley case. So I think that that's a basis alone for vacating these citations. But today, I think it goes to the heart of some major flaws with each citation I want to touch on. Briefly, citation one, item one, that's the general hazard standard. It says you can't expose employees to an undue hazard to life. And there's just not facts sufficient, there's not substantial evidence to support a finding of an undue hazard. You have the only mention of housekeeping issues, but under their own combustible dust directive, it says that loose powder, which is a central piece of evidence for their housekeeping issues, loose powder is not normally even a housekeeping issue or a violation. And that's, if you want it to be a violation, you've got to even, you've got to take samples of it. Citation one, item four, is the one that involves combustible dust. That's the industrial powered pork truck requirement that says you can't operate pork trucks if you have combustible dust. I believe that one's quite clear. The directive says you have to take samples, you have to send them to be tested. That wasn't done. Without that testing, you can't, you have no evidence. Does the regulation say anything about that? I'm not talking about the directive, but the regulation on which the citation was based, does it say anywhere about collecting dust? The regulation does not, but the regulation doesn't provide a definition of combustible dust. And the parties both agree. The ALJ recognized at trial that you have to look to the directive for a definition. So when you go to the directive, it gives a narrative definition and then it lays out the testing requirements, the sampling requirements. It's very direct. It's very, it provides a scientific objective, verifiable, black and white test for whether you have combustible dust. Without the directive, you're just left with this objective, that's combustible dust. Well, the secretary, though, has interpreted the regulation in combination with the directive as not having required the inspector to collect samples. Correct? That is their position, I believe. However, I think. Well, that is their position. And don't we owe that position some deference, given that they're interpreting their regulation and the related directive? Well, I think we owe a deference to the extent that there's a reasonable position to be taken within that deference. Here, I don't believe there is. The directive says you must take samples. You shall send it to be tested. And in all the cases that we've reviewed, we haven't found a single case where you have combustible dust citation that was upheld without proper testing and sampling. Aren't they relying on this pyrotechnic exception? I'm not, there's not a pyrotechnic exception. I think they've pointed to the pyrotechnic directive, which says that combustible dust or that the pyrotechnic composition is combustible. I think. Well, that's the directive, but isn't there, isn't there reference in the, in the combustible dust directive itself that speaks to that? I don't believe there's language that says that the testing doesn't have to take place. As to manufacturers? Your Honor, I'm not aware of that. I believe the directive says specifically that you have to take samples. The language of the directive, there's that word potential. If they find that there are potential combustible dust hazards, which suggests to me that there is an inspection and they are uncertain. So they take a sample here. Of course, we had a fire. Doesn't that make a difference? I don't believe it makes a difference because you don't have well, first, you don't have a cause of the fire determined. Nobody knows what exactly causes fire. So I think that, you know, the regulation about combustible dust doesn't talk about fires. And I understand that's in the context. But here, I think it's just it's black and white. All the cases, you have cases where you have coal dust suspended in the air in the National Coal case. In those cases, it seems to me that they highlight the difference between where you have a prototechnic dust versus a dust where it may or may not be combustible depending upon the concentration of a particular substance. Here, we know that the black powder used in the fireworks is combustible. Well, I don't think we know that this black powder was combustible. I think that's why the test accounts for things like moisture, like contamination, like how much it's compacted, confined to a space. You know, coal dust and grain dust, I think, are pretty notorious. You've seen in the news that they can they can combust everything in this courtroom, including you and I, can combust given certain conditions. And I think that's the point of the directive. Well, the directive says that the basic component of pyrotechnics is black powder. A mix of 75 percent potassium nitrate, 15 percent charcoal and 10 percent sulfur. I mean, we already know what we're dealing with here. It's not an unknown factor of combustibility. Well, I think we know certain characteristics given given certain circumstances here. In this case, the actual facts of this case, we don't have we don't have a sample. We don't know exactly what that what that composition was. And in fact, as we point out in the brief, fireworks contain things like like clay, like rice holes. We don't know exactly what the fire marshal saw. We don't know what it was that ignited the fire. It may not even have been pyrotechnic composition. I think that there's the record talks about that the that the composition was moist. So I think that that's the point we're making is that we don't know. The secretary may kind of again, this raves that, well, it's fireworks. It's got to be. Well, I understand there is. It's but but let's let's stick with the directive. And this particular citation, is it your position that the substantial evidence requirement for affirmance here cannot be met without testing? Is that your position? That is our position, Your Honor. And again, I guess I would to to address the secretary's contention that they don't have to follow this directive. I think there's no case law to support that. The cases that they've cited, I think, don't deal directly with that issue. They deal with waivers by employers of rights and they deal with lack of of harm to the employer, lack of prejudice. Here, we're certainly dealing with the prejudice. I think if if they're allowed to forego the testing requirements, then we face a citation. We're clearly prejudiced by that. I'd like to turn now to citation two, item one, that's the hazard communication requirement. And that's the regulation that says that if if you're dealing if your employer dealing with hazardous chemicals, you have to participate in this hazard communication program. Jake's Fireworks doesn't deal with hazardous chemicals. We import finished consumer products, packaged, ready to go on the shelf. They're regulated by multiple agencies before they get here. So they're exempted under the article's exemption. The article's exemption says that if it has three prongs to it, the first two prongs are not an issue here. Both parties agree. And I think the ALJ recognized that 1.4G fireworks meet those criteria. So it's item three that's under contention here. And it says that a manufactured item which under normal conditions of use does not does not release more than very small quantities of hazardous chemicals and does not pose a physical hazard or health risk to employees. So ALJ essentially took that third prong and created two prongs out of it to make a four part test. She separated the prepositive modifier under normal conditions of use and left it only applying to the release of chemicals and not to the item being a physical hazard. Substantially changes the meaning of this exception. I think we've cut in our brief the canons of construction that this court has affirmed in the Osage Wind case. I think provided clearly that under normal conditions of use applies to all the elements in that series which includes physical hazard. Well normal conditions of use you and your briefs seem to say it's the normal conditions of use of the ultimate purchaser of the fireworks. But these are these standards are for protection of the employees. So we should be looking at normal conditions of use from the perspective of the employee shouldn't we. You're correct Your Honor. So storage and handling would be included in that. Sure. And so under storage and handling these items are not a physical hazard. They're in a box. They're moved around. So I think but they do contain explosive material. They do contain their warnings on the package. Sure. And I think it's important here to consider that these are these are again consumer items. This is the same thing in the same condition that goes on the shelf that an eight year old comes in with his dad picks it out takes it home looks at it looks at the packaging takes it and lights it on fire let alone handles it and stores it. And that's regulated by CPSC by DOT. They have to be before these products can even be imported or even produced they have to be approved by DOT according to the 87-1 specifications. 87-1 is adopted by DOT at 49 CFR 173.64 and .65. So before we even produce them they're approved. They're tested by independent third party. They're brought over CPSC regulates them and tests them. So if consumers can use them and they're not a physical hazard when they're lit on fire normal handling shipping and handling of them where they're not set on fire is certainly not a physical hazard. I don't think that the public would have access to them if they were a physical hazard just in and of themselves. And that's why I think that this normal conditions of use is so important. Without it obviously I think the finding is arbitrary and capricious because you're applying simply the wrong law. It changes this dramatically. Without that modifier it essentially means that any product that's a physical hazard under any circumstance you know it doesn't fit the exception. I think that would basically make the exception worthless. Does OSHA's interpretation of this definition of articles affect should we give that deference? In this case no. I think that this is again this is very clear. I think this Court has affirmed that the reading of this. I think that OSHA's reading of this quite honestly just it helps to fit the citation in this case. Well OSHA in the rules and regulation page which I'll neither party cited here says it's talking about the when it was amended says the new definition differs from the current one in that it includes as articles items which release not more than very small quantities, minute or trace amounts of a hazardous chemical as long as these items do not pose a physical risk or health risk to employees. Doesn't say anything about the normal use. It just says the the traces of the hazardous chemical have to not pose a risk to the employees. Your Honor I think that I think it's important to even if that is the case even under that interpretation there's still no evidence that a consumer firework is a physical hazard and it doesn't release any chemicals certainly. Like I said it's a finished packaged item. So I think even under a correct reading I think it's important there is there's no evidence in the record these are physical hazards they release hazardous chemicals. So correct reading incorrect reading I think either way the citation should be vacated. There's either not substantial evidence or it's arbitrary and capricious. One of the two. So your position is that fireworks do not contain hazardous chemicals that could be a risk to employees. I don't think they contain hazardous. They don't contain a hazardous chemical at all. They're composed of hazardous chemicals perhaps. I think again under certain circumstances here we're not dealing with what are they composed of we're dealing with. Do they release hazardous chemicals. Doesn't this fly in the face of the evidence that there was debris and gunpowder strewn around this facility. I mean you keep talking about self-contained but that doesn't sound very self-contained. Well again this is where normal conditions of use comes in. And under normal conditions of use they're in a package they're boxed up they're on a pallet they're wrapped that's normal conditions of use. I think why wouldn't it be normal sometimes for a package to become not self-contained in the course of storage and moving it around and that sort of thing. That seemed to have happened at this location. Well the location of the accident was actually a cleanup operation from an old site. So I think that that's that's distinct from normal conditions of use. And again normal would I think indicate what normally goes on what's what's most likely to happen what happens more often than not. And that is that packages are handled in a proper way and you don't have. Shouldn't there be a safe means by which to clean up a facility that the company has moved out of. Why isn't it normal to clean up afterwards and the cleanup involves cleaning up after the debris and gunpowder that was in proximity to the forklift truck. Well I think there are there are means to clean up properly and I think that isn't that the whole point of having the the regulation about the proper forklift. Well I think that those regulations will the forklift again without combustible dust that doesn't come into play. And we don't believe it does. But I think the other regulations regarding cleanup or housekeeping issues or NFPA violations we weren't cited for any of those violations and not an issue in this case. The secretary chose to make the site to be citations and we don't believe that any of them fit your honor. I see I'm out of about out of time. You are out of time. I am out of time. Thank you. Better appreciate your argument and we'll hear from counsel. May please the court. Ron Gottlieb for the Secretary of Labor. I can I mean I can be brief. I'm going to focus on what he's argued today unless the court has questions about anything else in the briefs. I just want to point out that the argument that the court that the fire has never been determined and this is just rest it's a locator overstates the case. The fire inspector testified that the most likely cause of the inspection was ignition of loose fireworks on the floor of the container and he couldn't eliminate he couldn't determine from the various potential ignition sources that he identified which one was most likely to have caused to have ignited that loose powder. But all of them are related to the handling of the fireworks in the container. So it's using the accident as evidence of the undue hazard was perfectly appropriate and is not rest it's a locator reason. As for the director the directive establishes a national emphasis program for inspecting industries other than manufacturers of that handle combustible dust. Nothing in the directive or any unreviewed AO day decisions on which the AO on which Jake's relies said says that combustible dust testing is required regardless of the type of dust involved in the type and the weight of the other evidence that's presented on combustible dust or the purpose of the inspection. Regardless of whether OSHA should have expanded the inspection to perform an inspection under the national emphasis program is irrelevant because it did not. It conducted a fatality inspection. The fatality inspection was looking back at the conditions that occurred at the time of the at the time of the accident that caused a fatality. The national emphasis program would have been forward looking. You would have taken the dust samples say you know this is a combustible dust hazard. Let me let me let me make sure I understand the terminology you're using when you say the national emphasis program is that the combustible dust directive. That's the directive on combustible dust that they've been relying. Okay let's call it that. Okay a little more clear. And so my question then is whether the combustible dust directive applies to the regulation here that was the basis for the citation. That is the one the 1910 178 C 2 7 3 truck combustible dust regulation. No I mean it's not an attempt to interpret or apply 1910 178 it's intended to establish an inspection program for industries that handle combustible dust. So okay I need to get a clear answer to this because this is an issue where I'm having some trouble. If you can help me with this. So we have this citation. It's the it's the regulation about using the forklift. And and and my question is according to at least according to opposing counsel that that there was a need to take samples under the combustible dust directive to justify this citation. That wasn't done. And your response to that is what. No the directive did not apply to the inspection at the compliance okay. And why not. Because he was conducting a fatality inspection and not a poke not an inspection under the national emphasis program created by the director. So so the directive is not even relevant for me. I don't think it's relevant. And it's not relevant to any particular standard that the. That is an issue in this case. Is it wasn't. Is it because there's a fire or because there's a fatality that it's. One that the fire is relevant. But it's not because there's a fire. It is because one directive indicates that this doesn't apply to manufacturers of fireworks. And there's a separate directive on fireworks manufacturers which indicates we know the fireworks are combustible. We don't need to do testing. But Jakes wasn't a manufacturer. It depends on how broad the term manufacturer is using the directive that the manufacturer the pyrotechnics directive included more than just manufacturers that included importers that assembled fireworks and they and they broke down and reassembled fireworks. So it could be that they intended to pyrotechnic. But what's the secretary's position. Does it does it if the combustible dust directive does apply here. Does the manufacturer's provision. What's the what's the secretary's position. If the directive applied the inspector should have. Taken samples and required and taken and done combustibility testing. But that doesn't lessen the probative value of the evidence that was present. You know if. OK so what you're saying is that if it applies the testing should have been done but failure to test was not fatal to the citation. Correct. Why is that. Because it is because the issue before the ALJ was the probative value of the evidence presented before on the case. The directive is to establish an effective enforcement program for OSHA. It doesn't say anything about the probative value of other evidence such as the conclusions of a fire inspector that the substance that issue is fireworks material or from the definitions of what fireworks are from the the material safety data sheet and other representations as to the content of the container as containing fireworks. So the probative value of the fire inspector and the Jake's employees that said these were fireworks and the definition of what fireworks are and the warnings on the packages the material safety data sheet all established that this dust that was in the container was combustible dust. And you can you can absolutely need to substantial evidence and without combustibility test. But your position is that the testing doesn't apply at all. Because I didn't like the directive with with respect to combustible dust doesn't apply in this situation. It didn't apply to this inspection. OK. Where would I go if I wanted to see the secretary's the written authority for the basis of that opinion that it doesn't apply. Is it is it written in the directives. I think it's an interpretive issue regarding the directives themselves and also the purpose of the directive. As I said it was to establish a program for conducting inspections under that directive. We didn't conduct the inspection under that. Is there a guidance document somewhere that says that. Only the directives themselves. Both of you. I don't know. And just the directive somewhere say that specifically. Well it provides examples as to when you should expand the inspection to include an inspection under the National Emphasis Program. And there is language that indicates that the compliance of the at least arguably we probably should have or the area office should have expanded the inspection instead of limiting its inquiry into what caused the accident. And to other still hazards present at the site that need to be addressed which is what the National Emphasis Program inspection would have been directed to in which we would have had arguably conduct a combustibility test. But if I but even if the other aspect of the argument is even if it was fine even if we were required to do it it would be harmless error because it's there's no effect on the value of property the property value of the other evidence that was presented. The ALJ couldn't ignore the other evidence that was presented and the combustibility of firework dust. And by that by that you mean the broken fireworks in the collection. Correct. Correct. That ignited and so I want to make sure I understand your answer to Judge McHugh's question. I mean you said a couple of times now that because this was a fatality investigation that the directive doesn't apply does the directive exempt fatality investigations anywhere. I mean where is no no no I don't know where can we find some support other than what you're saying. Well I think I did try to cite in the brief the purposes the fatality inspections and what were the conditions on August 12th when the fire erupted and he got there August 13th if you want the directive said you. There is a provision that talks about when you dare to inspect the fatality you know expanding and do an inspection on the National Emphasis Program. They didn't do that. But what I'm trying to the point I'm trying you know it's sort of provisions on that I think we cited in our brief in the in the directive as to when you should expand a fatality inspection or expand an inspection that was initiated for some other purpose. And what I'm trying to make the fatality was what were the conditions on August 12th. Well if there hadn't been a fatality but just severe injury then we'd be talking about a different. I think that I think the process would be the same whether you do it for whether you're there for a catastrophic accident or anything. But the focus of the inspection was what were the conditions on August 12th that led to a fire and were there any violations relevant to that action. Mr. On August 13th when he got there the compliance officer could say oh under the directive I'm supposed to expand it to not limit to what happened on August 12th but let me see what's here on August 13th and see are there any abatement actions that need to be taken to address the combustible dust that I see there. And then the combustible dust directives provisions would say conduct you know take samples and do a test. But my argument would be the same that the fact that they didn't do it wouldn't mean that there's no substantial evidence for the proposition that the fireworks are combustible dust because it's a fire inspector. So just to sum up you're saying the combustible dust directive doesn't apply here because it was a fatality investigation. But even if it did and it should have been and samples should have been taken harmless air. That's your position. Correct. That's a fair statement. Could I ask you Mr. Klassen said without combustible dust the kind of forklift does not come into play. Do you agree with that statement. Well it depends if you make a decision between if you think that fireworks are combustible dust they clearly shouldn't have used the fireworks to clean up loose fireworks. It's clear from the testimony and the NFPA standing. Well the distinction I'm trying to make is the difference between atmospheric dust and then what we see in subsection seven here deposits or accumulations of such dust. That doesn't sound like it's atmospheric. No we're relying on the deposit to accumulate. I think the ALJ in theory of the citation was a deposit and accumulations of dust. So is the answer that it does matter. What kind of a forklift was used. Absolutely. But the standard prohibits the type of forklift they were using if there's either combustible dust in the air which is governed primarily by another provision. And then there's another provision cited provision that proceed when it's when it's deposits or accumulations. But whether it's in the air or on or deposits or accumulation they couldn't use that fire that type of forklift. As long as you accept the proposition that fireworks are combustible dust. Final question. If their argument is that even when you see broken fireworks that it could include things that aren't combustible such as clay cardboard various things and that therefore you can't assume that the concentration of black powder was was enough to make it combustible dust without testing. Do you have a response to that. There's no evidence or logic to that fireworks testing and the fireworks the internal composition of the portion of the fireworks is combust. The fact that there are other non combustible portions which I quote like clay that make up part of the fireworks doesn't make the not the combustible parts non combustible. Unless there are any further questions. Secretary requests a petition for you to be denied. Thank you counsel. I think we've exhausted everyone's time. So I'd like to thank counsel for your arguments. The case will be submitted and counsel are excused.